**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re:                                                            :
                                                                  :   Chapter 11
ACREX, INC.,                                                      :
                                                                  :   Case No. 13-13133 (ALG)
                                    Debtor.                       :
------------------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER

Before the Court is an objection by Acrex Inc. (the "Debtor") to two proofs of claim filed by Budow Sales Corp., The Budow Group, and Allison Budow Sales, Inc. (collectively, "Budow"). As further discussed below, at a June 26, 2014 hearing on the objection, both the Debtor and Budow agreed to treat the objection to claim and Budow's response as cross motions for summary judgment. For the reasons stated below, the Court grants the Debtor's motion for summary judgment and denies Budow's motion for the same relief, thus expunging Budow's proofs of claim.

### Facts

In December, 2011, the Debtor entered into a commercial lease with 214 West 39th Street, LLC (the "Landlord") for premises at 214 West 39th Street, Suite 403, New York, New York (the "Premises). Pursuant to the terms of the lease, a tenant could only sublet with the Landlord's written consent. On or about June 26, 2012, with the Landlord's written consent, Debtor entered into a written agreement to sublet all of the Premises to Eli Dahan, the owner of a fashion and apparel company called Studio 33.

Barry Budow, Terri Budow, and Alison Budow, are the principals of Budow, a chain of fashion product marketing companies. Barry Budow asserts that on a business trip to New York in 2012 he spoke with Dahan about becoming a "co-subtenant" of the Premises. According to Mr. Budow, he also met, "John," who was allegedly a representative of Acrex in charge of

1

"managing" the Premises. He says the three men reached an oral agreement regarding Budow becoming a "co-subtenant" along with Studio 33. Mr. Budow says he was under the belief that a written sublease would be sent to him shortly, but there is no dispute that a written agreement was never transmitted or executed.

In January, 2013, Mr. Budow was informed that Dahan had moved out of the Premises and that all tenants of the Premises had been locked out. Budow's belongings were removed from the Premises and placed in possession of the building's superintendent.

Following the eviction from the Premises, Budow twice sought reinstatement in New York Landlord-Tenant Court, which was denied. It then sued in New York State Supreme Court alleging breach of contract, illegal eviction, business interruption and fraud against multiple defendants, including Dahan and the Debtor. On motions to dismiss by several of the defendants, all of Budow's charges against the Debtor were dismissed except for the fraud claim. As to this claim, Justice Singh held in an oral decision that Budow had satisfied New York State's heightened pleading standard for fraud, pursuant to CPLR 3016(b). *See Budow's Response*, Ex. E.

On the Debtor's motion to dismiss, Budow does not argue that the State court erred in dismissing its other claims, and there appears to be no dispute that in light of the action of the Supreme Court, the only remaining claim by Budow against the Debtor is one for fraud. As noted, the State court denied the motion to dismiss the fraud claim for failure to state fraud with the requisite particularity under CPLR 3016(b) (similar to F. R. Civ. P. 9(b)). The issue here, however, is different— whether either party is entitled to summary judgment based on the record.

2

**Discussion**

In accordance with Bankruptcy Rule 7056, which incorporates Fed. R. Civ. P. 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Morenz v. Wilson–Coker,* 415 F.3d 230, 234 (2d Cir. 2005); *In re Ticketplanet.com,* 313 B.R. 46, 58 (Bankr. S.D.N.Y. 2004). The movant must establish the absence of any genuine issues of material fact, and the court must draw all inferences in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *see also In re Ames Dep't Stores, Inc.,* 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. at 323.

Budow's pleadings and papers in this Court focus on the alleged agent of the Debtor named "John." According to Mr. Budow's New York State Supreme Court affidavit submitted here, Mr. Budow believes that "John's" last name was Kim, but he repeatedly says that he was not sure if that is actually his last name. The only information Mr. Budow could provide about "John" is his phone number—improbably said to be a cell phone number with a "212" area code (not ordinarily used in New York City for cell phones)—and a vague description; according to Mr. Budow, John was an Asian-American, approximately 40 years old with dark hair, roughly 5'8" and with a medium build. In response, the Debtor states that it was not aware of Budow's occupation of the Premises until just prior to the State court proceedings and that the Debtor

never entered into a sublease agreement with Budow or consented to Budow's sub-tenancy. *Aff'd. of Hanho Choi,* ¶ 5–6.

The Debtor's claim objection put in issue Budow's assertion that it was fraudulently induced by Acrex to become a "co-subtenant" of the Premises. In response, Budow merely submitted the affidavits it had earlier submitted in the State Court. Assuming that for pleading purposes Budow sufficiently charged "John" with fraud, on the instant summary judgment motion Budow failed to submit any admissible evidence charging the Debtor with "John's" alleged actions. The only evidence in the record as to John's agency is John's purported statement that he was a representative of Acrex. An agency cannot be proved solely through the declarations or admissions of the agent. *Moore v. Leaseway Transp. Corp.*, 65 A.D.2d 697, 698, 409 N.Y.S.2d 746, 747 (1st Dept. 1978) *aff'd,* 49 N.Y.2d 720, 402 N.E.2d 1160 (1980) ("the declarations of an alleged agent may not be shown for the purpose of proving the fact of agency."); *see also Chandler v. Lincoln Capital Corp. (In re Chandler)*, 76 B.R. 927, 931 (Bankr. E.D.N.Y. 1987). "[T]he party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence." *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 350 (S.D.N.Y. 2013), quoting Restatement (Third) of Agency § 1.02 cmt. d (2006). There is nothing in the record to charge the Debtor with "John's" misrepresentations (if any) or to indicate that "John" was authorized by the Debtor to make them.

Moreover, assuming *arguendo* that John was an officer of the Debtor with authority to enter into leasing arrangements, and that he colluded with Dahan to make the representations that Budow claims, he was apparently acting adversely to his employer. It is not contested that the Debtor's lease with the Landlord required the Landlord's permission for any subletting, and that this requirement had been complied with when Dahan subleased the premises from the Debtor. If

4

"John" colluded with Dahan to induce Budow to take a portion of the Premises, and assuming *arguendo* "John" existed and was an employee of the Debtor, he opened the Debtor to liability to the Landlord without any benefit to the Debtor in return—even Budow does not claim that it ever made any payment to the Debtor, whether denominated rent or anything else. A corporate agent engaged in a fraud against the corporation does not bind the corporation. *See* 3 Fletcher Cyclopedia of the Law of Corporations § 826 (2010); *see also Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 480, 938 N.E.2d 941, 961 (2010) ("An agent's actions and knowledge cannot be imputed to the principal, however, if the 'agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person.'"), quoting *Ctr. v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784, 488 N.E.2d 828, 829 (1985).

Moreover, assuming Budow has on this record sufficiently charged the Debtor with the misdeeds of "John," the five basic elements necessary to sustain a claim of fraud under New York law are: (1) a misrepresentation of an existing material fact; (2) knowingly or recklessly made by one party to another; (3) with the intent to deceive, or scienter; (4) which misrepresentation is justifiably relied upon; (5) to the detriment of the party relying on it. *Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir. 1987); *In re Embers 86th Street, Inc.,* 184 B.R. 892, 898 (Bankr. S.D.N.Y. 1995). Courts have repeatedly held that an essential element of a fraud claim is that there must be reasonable reliance on the misrepresentation. *Water St. Leasehold LLC v. Deloitte and Touche LLP*, 19 A.D. 3d 183, 185, 796 N.Y.S. 2d 598, 599 (1st Dept. 2005); *Meyercord v. Curry*, 38 A.D. 3d 315, 316, 832 N.Y.S. 2d 29, 30 (1st Dept. 2007); *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.,* No. 09-CV-8892012 NGC JMA, 2012 WL 4174862, *12 (E.D.N.Y. Sept. 18, 2012). Budow cannot satisfy the fourth element of fraud, reasonable and justifiable reliance, even drawing all inferences in a light most favorable to it.

Assuming *arguendo* all of the facts asserted by Budow, it is not reasonable for a business entity to move into a commercial space on the oral representations of a "John," without speaking to the Landlord, signing a lease, or viewing the master lease. Essentially, Budow is claiming that it was justifiable and reasonable for it to rely on an oral conversation and a handshake exchanged with "John" and Dahan.  However, the master lease required the Landlord's written consent to sublease the Premises, and there is no dispute that consent was never requested or given.  Even if this Court were to accept Budow's contention that "John," an agent of Acrex, told Budow that it could move in, Budow could not have reasonably or justifiably relied on this representation because "[w]here . . . a lease contains a clause requiring modification of its terms to be in a writing signed by the landlord, oral modification is generally precluded." *Aris Indus., Inc. v. 1411 Trizechahn Swig, LLC*, 294 A.D.2d 107, 744 N.Y.S.2d 362, 363 (1st Dept. 2002); *Joseph P. Day Realty Corp. v. Jeffrey Lawrence Associates, Inc.*, 270 A.D.2d 140, 141, 704 N.Y.S.2d 587, 588 (1st Dept. 2000) (same). In *Int'l Plaza Associates, L.P. v. Lacher*, 63 A.D.3d 527, 528, 881 N.Y.S.2d 414, 415 (1st Dept. 2009), the Court held that reasonable reliance on an alleged misrepresentation for a fraud claim was precluded by a lease term requiring modifications to a lease to be in writing.

In addition, New York courts have also held that "[w]here a party has means available to him for discovering, 'by the exercise of ordinary intelligence', the true nature of a transaction he is about to enter into, 'he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.'" *Vermeer Owners, Inc. v. Guterman*, 169 A.D.2d 442, 445, 564 N.Y.S.2d 335 (1st Dept. 1991), *aff'd,* 78 N.Y.2d 1114, 585 N.E.2d 377 (1991). Budow presumably is a sophisticated entity, and its failure to investigate is unexplained.  As in the cases cited above, there were explicit terms in the master lease for the

6

Premises that forbade subletting without the Landlord's written consent, and Budow could have easily discovered this requirement by reviewing the master lease. Budow's failure to act reasonably or in a professional manner precludes its fraud claim against Acrex.

**ORDERED,** that Acrex's motion for summary judgment is granted, thus expunging Budow's proofs of claim numbers one and two.

Dated: New York, New York
      July 21, 2014

                                            **s/Allan L. Gropper**
                                            UNITED STATES BANKRUPTCY JUDGE